

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Maricelis Rivera Medina<br>Alberto A. Villafañe Rivera<br><br>    Recurrido<br><br>        v.<br><br>Alberto A. Villafañe<br>González<br><br>    Peticionario | Certiorari<br><br>2012 TSPR 135<br><br>186 DPR ____ |

Número del Caso: CC-2011-465

Fecha: 23 de julio de 2012

Abogado de la Parte Peticionaria:

    Lcdo. Daniel Muñoz Fernós

Abogado del Recurrido:

    Lcdo. José Edoardo Díaz Díaz

Materia: Sentencia y Opinión Disidente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| MARICELIS RIVERA MEDINA **ALBERTO A. VILLAFAÑE RIVERA**<br><br>Recurrido<br><br>v.<br><br>ALBERTO A. VILLAFAÑE GONZÁLEZ<br><br>Peticionario | Núm.: <u>CC-2011-0465</u> | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 23 de julio de 2012.

En este recurso se presenta la siguiente interrogante: ¿Se extiende automáticamente el efecto de una Resolución ordenando el pago de alimentos expedida mientras el alimentista, ya mayor de edad, cursaba sus estudios de bachillerato a estudios posteriores de *Juris Doctor*? ¿Hace diferencia que el alimentista tomara un año libre antes de matricularse en la escuela de Derecho?

I

El trasfondo procesal del caso se resume de la siguiente manera.

Poco antes del 24 de abril de 2002, fecha en que su hijo Alberto A. Villafañe Rivera (recurrido) habría de cumplir veintiún (21) años de edad, el Sr. Alberto A. Villafañe González (peticionario) solicitó al tribunal de instancia el relevo de una pensión alimentaria tramitada, hasta ese

entonces, por la madre de su hijo para beneficio del menor.

En respuesta, el recurrido, ya advenida su mayoría de edad, sometió una *Moción Reclamando Derecho a Pensión Alimentaria por Derecho Propio*. Como fundamento, indicó que en esos momentos cursaba su tercer año de bachillerato en la Universidad de Puerto Rico y no contaba con los recursos necesarios para poder **"finalizar sus estudios universitarios"**, a la vez que el peticionario tenía a su haber suficientes medios económicos. (Énfasis nuestro). El foro primario refirió el asunto a la Examinadora de Pensiones Alimentarias y ordenó que, entre tanto, continuara en efecto la pensión vigente de trescientos cincuenta dólares ($350.00) mensuales.

Luego de varios trámites procesales, el 10 de abril de 2003 el tribunal *a quo* celebró una vista donde el peticionario se puso al día con la deuda de las pensiones atrasadas. En lo atinente a la solicitud de alimentos del hijo, el juez a cargo del caso se limitó a ordenar lo siguiente:

> A partir del mes de mayo 2003, el [peticionario] pagará $400.00 directo a su hijo.
>
> ....
>
> El Tribunal ordena al joven que todos los comienzo de semestre en 10 días se [r]emita [el] programa de clases que evidenci[e] que está estudiando y cuando culmine el semestre 10 días para que evidencie el aprovechamiento académico.

Minuta de 10 de abril de 2003.

El 11 de septiembre de 2009, transcurridos en exceso de seis (6) años desde la concesión de alimentos aquí en

controversia, el peticionario sometió una *Moción urgente solicitando aclaración sobre deuda de ASUME*. Según alegó el peticionario, a esa fecha la cuenta con la Administración para el Sustento de Menores (ASUME) reflejaba una deuda ascendente a veinticuatro mil cuatrocientos setenta y cinco dólares ($24,475.00), aunque en realidad no adeudaba nada. Solicitó, por tanto, la conciliación y cierre de la misma.

El peticionario se percató de la alegada deficiencia en ASUME por unas dificultades que tuvo con unos dineros que le eran adeudados por el Departamento de Hacienda, así como por inconvenientes confrontados en sus gestiones ante otras agencias gubernamentales. Según explicó, su reintegro de contribuciones sobre ingresos correspondiente al año 2008 le fue remitido a ASUME, entidad que a su vez lo envió a la madre del recurrido. Petición de *Certiorari*, págs. 3-4.

Ante la moción arriba indicada, el recurrido se opuso a las pretensiones de su padre, argumentando que subsistía la deuda consignada por ASUME ya que, una vez concluidos sus estudios universitarios, había comenzado, inmediatamente, sus estudios en Derecho a tiempo completo hasta obtener, en el término de tres (3) años, el grado de *Juris Doctor*. Indicó además que, durante ese tiempo, tuvo la necesidad de recibir alimentos y el peticionario contaba con la capacidad económica para pagarlos. De igual forma, planteó que su padre nunca solicitó el relevo de la pensión alimentaria impuesta en el año 2003. *Moción en Oposición a Solicitud de Cancelación de Deuda….*

A pesar de la oposición oportuna del recurrido, el 13 de noviembre de 2009 el foro primario dispuso para el cierre de la cuenta en ASUME "sin deuda y relevo de pensión".

Ambas partes presentaron una serie de mociones y réplicas, cada cual afianzándose a su posición original. Entre éstas se destacan, una moción de reconsideración sometida por el recurrido el 30 de noviembre de 2009, afirmando que persistía la deuda, así como una solicitud de desacato de 21 de diciembre de 2009 fundamentada en el alegado incumplimiento de pago.

El 7 de junio de 2010 el tribunal de instancia declaró *No Ha Lugar* la moción de reconsideración. No obstante, señaló una vista para dilucidar el planteamiento de desacato instado por el recurrido. En la vista celebrada el 30 de junio de 2010, se le ordenó al recurrido presentar evidencia de que había continuando sus estudios universitarios ininterrumpidamente hasta mayo 2004, así como las transcripciones de crédito correspondientes.

Conforme le fuese ordenado por el tribunal, el recurrido sometió las transcripciones de crédito de la Universidad de Puerto Rico, así como la certificación oficial de su grado de Bachiller en Artes obtenido el 5 de junio de 2004. También acompañó copia de su transcripción académica acreditativa de haber comenzado sus estudios de Derecho en agosto de 2005 y obtenido su grado de *Juris Doctor* en mayo de 2008.

Transcurridos una serie de eventos procesales, el tribunal *a quo* celebró una vista el 7 de septiembre de 2010 donde testificaron tanto el peticionario como el recurrido,

estando representados por sus respectivos abogados. También se sometió en evidencia prueba documental relacionada con los exámenes de admisión a la escuela de Derecho tomados por el recurrido, certificación del grado obtenido, trascripción de créditos tanto a nivel de bachillerato como de postgrado y copias de giros postales del peticionario.

A base de ello, el 4 de octubre de 2010 el Tribunal de Primera Instancia dictó una Resolución decretando "No Ha Lugar la solicitud presentada por el alimentista". Advirtió que éste había interrumpido sus estudios luego de concluir su bachillerato. Señaló que no se presentó evidencia de gastos por ninguna de las partes. Tampoco se demostró, de manera fehaciente, la necesidad de ayuda financiera del recurrido durante sus estudios en Derecho ni la capacidad económica de su padre para este periodo.

Inconforme, el recurrido apeló el referido dictamen al Tribunal de Apelaciones, el cual emitió Sentencia revocando al tribunal primario.[1] El foro apelativo intermedio concluyó que la pensión fijada en el año 2003 continuó vigente durante todo el periodo de los estudios en Derecho del recurrido, independientemente del interludio de un año que le tomó prepararse para retomar el examen de ingreso. Razonó que, a base de lo resuelto en Valencia, *Ex parte*, 116 D.P.R. 909 (1986), recaía sobre el padre acudir al tribunal a pedir el relevo de pensión, puesto que no se mostró ninguna de las

---

[1] El Hon. Misael Ramos Torres, Juez de Apelaciones, disintió con opinión escrita.

excepciones para la dispensa de la obligación de prestar alimentos con efecto retroactivo.

En atención a la presentación del presente recurso junto a una moción en auxilio de jurisdicción por parte del peticionario, el 17 de junio de 2011 emitimos Resolución expidiendo el auto de *certiorari* solicitado. Ambas partes habiendo sometido sus respectivos alegatos, resolvemos.

II

"Ni la emancipación ni la mayoría de edad de los hijos relevan al padre de su obligación de alimentarles si aquellos lo necesitaren." Sosa Rodríguez v. Rivas Sariego, 105 D.P.R. 518, 523 (1976). En ocasiones anteriores hemos aclarado que el deber de proveer alimentos a hijos menores surge de diferente estirpe que la correspondiente exigencia frente a hijos mayores de edad. Fonseca Zayas v. Rodríguez Meléndez, 180 D.P.R. 623 (2011); Rodríguez Amadeo v. Santiago Torres, 133 D.P.R. 785 (1993).

La obligación de los progenitores de proveer alimentos a sus hijos menores de edad es parte esencial del derecho a la vida consagrado en la Sección 7 del Artículo II de la Constitución de Puerto Rico, Art. II, Sec. 7, Const. P.R., L.P.R.A., Tomo 1 (2008). Fonseca Zayas v. Rodríguez Meléndez, *supra*; Torres Rodríguez v. Carrasquillo Nieves, 177 D.P.R. 728 (2009). El deber de brindarles alimentos surge de la relación paterno-filial que se origina en el momento en que la paternidad o maternidad quedan establecidas legalmente. Íd. Dicha responsabilidad no se reduce

únicamente a un deber moral proveniente de su condición de progenitor, sino que igualmente se encuentra plasmada en nuestro ordenamiento.[2] Fonseca Zayas v. Rodríguez Meléndez, supra; Rodríguez Amadeo v. Santiago Torres, supra; Torres Rodríguez v. Carrasquillo Nieves, supra; McConnell v. Palau, 161 D.P.R. 734 (2004).

En lo concerniente a hijos mayores de edad, emancipados o no sujetos a la patria potestad y custodia de uno de sus padres, la obligación de proporcionar alimentos emana del Artículo 143 del Código Civil, 31 L.P.R.A. sec. 562 (1993), donde se consigna el deber general de los parientes de socorrerse mutuamente. Key Nieves v. Oyola Nieves, 116 D.P.R. 261 (1985).

Los contornos atinentes a las obligaciones alimentarias aparecen delineados a través de los Artículos 142 al 151 del Código Civil, 31 L.P.R.A. secs. 561-570 (1993 & Supl. 2011). Según la definición allí provista, los alimentos comprenden no sólo aquellas necesidades básicas para el sustento del alimentista, sino también su educación mientras éste sea menor de edad. Artículo 142 del Código Civil, 31 L.P.R.A. sec. 561 (1993).

No obstante la limitación concerniente a la edad fijada por dicho esquema normativo, la obligación de sufragar los

---

[2] Véase, por ejemplo, el Artículo 118 del Código Civil, 31 L.P.R.A. sec. 466 (1993), donde se le reconoce a los hijos el derecho a recibir alimentos, mientras que su Artículo 153, 31 L.P.R.A sec. 601 (1993), expresamente impone a los padres, como parte del ejercicio de la patria potestad sobre sus hijos menores o no emancipados, la obligación de alimentarlos y educarlos. Por su parte, el Artículo 143 del Código Civil, 31 L.P.R.A. sec. 562 (1993), exige a los parientes proveerse alimentos recíprocamente.

estudios de un hijo no cesa automáticamente al éste advenir a su mayoría de edad. Así pues, hemos resuelto jurisprudencialmente que en aquellos casos en que el alimentista haya iniciado sus estudios universitarios a nivel de bachillerato durante su minoría de edad, como regla general, tendrá derecho a exigir de sus progenitores que le provean los medios necesarios para concluir dicha etapa educativa, aun luego de haber llegado a la mayoridad. Argüello v. Argüello, 155 D.P.R. 62 (2001); Rodríguez Amadeo v. Santiago Torres, *supra*; Key Nieves v. Oyola Nieves, *supra*.

A través de este enfoque, hemos reconocido que "la percepción de que los estudios universitarios constituyen un 'lujo' es cosa del pasado; dichos estudios se han convertido en una necesidad". Key Nieves v. Oyola Nieves, *supra*, pág. 266.

De otra parte, la obligación alimentaria necesariamente varía cuando se trata de alguien quien, ya siendo mayor de edad, interesa iniciar estudios postgraduados. Este tipo de reclamación conlleva un análisis basado en consideraciones diferentes que exigen ser evaluadas individualmente conforme a los hechos que se presenten en cada caso. Argüello v. Argüello, *supra*.

A esos efectos, hemos expresado lo siguiente:

> La situación particular que representan los estudios postgraduados, como maestrías o doctorados, y el estudio de aquellas profesiones que requieren en exceso de los cuatro años de bachillerato amerita una consideración especial y separada que, como regla general, tendrá que ser resuelta de acuerdo a los hechos particulares de cada caso.

Key Nieves v. Oyola Nieves, *supra*, págs. 266-267.

Claro está, para ser merecedor de estos beneficios, es indispensable demostrar aptitud para los estudios a la par de aprovechamiento académico. No visualiza el Código Civil una obligación alimentaria frente a un alimentista quien, a pesar de su preparación, opta por no ocuparse provechosamente y prefiere la ociosidad en su lugar. Rodríguez Amadeo v. Santiago Torres, 133 D.P.R. 785 (1993). Como también hemos indicado:

> [E]l hijo que solicite "alimentos" o asistencia económica para estudios "postgraduados" deberá demostrar afirmativamente que es *acreedor de tal asistencia económica* mediante la *actitud demostrada* por los esfuerzos realizados, *la aptitud manifestada* para los estudios que desea proseguir a base de los resultados académicos obtenidos, y la *razonabilidad del objetivo* deseado.

Key Nieves v. Oyola Nieves, *supra*, pág. 267 (énfasis en original y notas al calce omitidas).

Lo anterior está condicionado, por supuesto, a que el alimentista demuestre tanto su necesidad económica, como la capacidad de pago del alimentante conforme el principio de proporcionalidad pautado por el Artículo 146 del Código Civil, 31 L.P.R.A. sec. 565 (1993). Argüello v. Argüello, *supra*; Chévere v. Levis, 150 D.P.R. 525 (2000); Rodríguez Amadeo v. Santiago Torres, *supra*.

Y es que, en lo atinente a la cuantía de la pensión a adjudicarse, la suma que corresponde pagar deberá ser proporcional a los recursos del que los da y a las necesidades del que los recibe, y se reducirá o aumentará en proporción a los recursos del primero y las necesidades del

segundo. Fonseca Zayas v. Rodríguez Meléndez, *supra*; Martínez v. Rodríguez, 160 D.P.R. 145 (2006); Argüello v. Argüello, *supra*.

El Artículo 147 del Código Civil, según enmendado, 31 L.P.R.A. sec. 566 (Supl. 2011), dictamina que la obligación de sufragar alimentos surge desde el momento en que se reclama judicialmente su pago.[3] Chévere v. Levis, *supra*.

En cuanto a rebajas o relevo de pensión, como regla general, su efectividad será prospectiva y coincidirá con la fecha en que se resuelva que proceden. No obstante, el tribunal primario tiene la facultad de ordenar que su dictamen se retrotraiga a la fecha en que formalmente se le solicitó tal remedio, siempre y cuando las circunstancias del caso así lo ameriten. Valencia, *Ex parte*, *supra*.

En lo atinente a pensiones alimentarias devengadas previo a este tipo de solicitud, no debe intervenirse con ellas. Podrán éstas reducirse o dejarse sin efecto por vía de excepción y únicamente en aquellas situaciones extremas en que el alimentante pueda probar a satisfacción del tribunal, no solamente los méritos de la rebaja que se interesa, sino también "que por razón de una enfermedad o accidente de índole incapacitante estuvo realmente imposibilitado de radicar a tiempo la moción de rebaja correspondiente". Valencia, *Ex parte*, *supra*, págs. 916-917.

---

[3] En lo pertinente, el Artículo 147 del Código Civil dispone lo siguiente: "La obligación de dar alimentos será exigible desde que los necesitare para subsistir la persona que tuviere derecho a percibirlos; pero no se abonarán sino desde la fecha en que se interponga la demanda". 31 L.P.R.A. sec. 566 (Supl. 2011).

Ya delineada la normativa aplicable, pasamos a dilucidar los méritos del planteamiento medular del recurso. Es decir, si la pensión fijada en el año 2003 se extendió hasta que el recurrido concluyó sus estudios de *Juris Doctor*.

### III

Enfocándonos en las circunstancias particulares del presente recurso, inicialmente notamos que no consta evidencia alguna en autos que denote que el dictamen del tribunal de instancia de 10 de abril de 2003 concierne a obligaciones alimentarias más allá de los cuatro (4) años de bachillerato del recurrido. Por el contrario, dicha Resolución respondió específicamente a la solicitud de ayuda económica sometida por el recurrido para poder concluir los estudios que proseguía para aquel entonces. Nada se dispone, ni en su petitorio, ni en la correspondiente determinación judicial emitida por el foro primario, para estudios posteriores una vez finalizado el grado universitario.[4] En este respecto, la obligación impuesta al peticionario de ayudar a su hijo está claramente fundamentada en lo decretado en Key Nieves v. Oyola Nieves, *supra*, pág. 267, donde reconocimos el rol vital que ostenta un diploma de bachillerato en la sociedad moderna.

De igual forma, según indicáramos anteriormente, para que surja la obligación de financiar estudios de postgrado, forzosamente se requieren unos trámites adicionales por parte

---

[4] De hecho, el peticionario cumplió a cabalidad con el pago hasta que su hijo se graduó de bachillerato.

del alimentista. Sobre éste recae el deber, y por lo tanto, el peso de probar los méritos de su pretensión. Es decir, demostrar su aptitud y aprovechamiento académico que justifiquen obligar al padre a costear su carrera ambicionada. También le toca convencer al tribunal de que sus objetivos de estudios adicionales son razonables dentro de las circunstancias fácticas vigentes. Por último, es menester que acredite, mediante evidencia creíble al juzgador, tanto su necesidad económica como la capacidad de pago del alimentante, suficiente como para ordenarle a éste continuar aportando a su gestión educativa.

En este caso, la solicitud interpuesta por el recurrido al advenir a la mayoría de edad se circunscribió a su deseo de "finalizar sus estudios universitarios", los cuales para aquel entonces, se delimitaban a un bachillerato. Todo indica, por tanto, que esto fue lo único que tuvo ante su consideración el tribunal *a quo* y, por ende, lo que ineludiblemente dispuso en su dictamen. Por consiguiente, la efectividad de la Resolución concernida necesariamente cesó una vez el recurrido completó sus cuatro (4) años en la Universidad de Puerto Rico y detuvo sus estudios formales. Ello es así puesto que, al cumplirse con aquello que dio origen a la orden de pago de alimentos, se extinguió su razón de ser.

Por ello, no existía fundamento para el peticionario acudir al tribunal y solicitar el relevo de pensión una vez tramitado el pago correspondiente al último mes del bachillerato del recurrido. Es principio reconocido que la

pensión se hace innecesaria una vez cesa la necesidad del alimentista.

Nos parece loable el que, a pesar de las adversidades confrontadas y haber fracasado en su primer intento en el examen de admisión a la escuela de Derecho, el recurrido se haya aplicado con tesón para lograr iniciar sus estudios conducentes a un *Juris Doctor*, así como graduarse dentro de un periodo de tres (3) años, *Magna Cum Laude,* a base de préstamos y del sacrificio de su señora madre. Sin embargo, no por ello podemos obviar las claras disposiciones estatutarias, al igual de lo consistentemente plasmado sobre esta materia en nuestra jurisprudencia.

En el caso ante nos, luego de un breve interludio, el recurrido prosiguió sus estudios en Derecho de manera independiente y nunca le reclamó los gastos a su padre. No fue sino hasta que surgió el debate por la alegada deuda de ASUME que el recurrido mostró interés en recibir alimentos de éste subsiguientes a su graduación universitaria.

Así como acudió al tribunal en el año 2003, correspondía al recurrido regresar al foro judicial, esta vez para justificar la continuidad de las ayudas de su padre por un periodo de estudios adicional. Conforme lo decretado en <u>Key Nieves v. Oyola Nieves</u>, *supra*, y su progenie, en la concesión de alimentos para estudios postgraduados los criterios a ser considerados por el tribunal tienen unas particularidades propias y el peso de probarlas le incumbe al que los solicita.

Advertimos que no debe interpretarse nuestra decisión como una aprobación a la interrupción *ex parte* del pago de pensiones que de alguna manera incidan con asuntos relacionados a hijos menores de edad ni la obligación de sufragar estudios universitarios conforme la jurisprudencia aquí citada. La obligación alimentaria en los casos de menores está revestida del más alto interés público. En aras de salvaguardar su bienestar, no le es permitido a un alimentante terminar por cuenta propia sus obligaciones según impuestas por orden judicial. En contraste, la responsabilidad de financiar estudios postgraduados de los hijos mayores de edad, preceptuada en el Artículo 143 del Código Civil, *supra*, está claramente fundamentada en consideraciones de otra naturaleza y le exige al propio alimentista una carga probatoria diferente.

Al atender los méritos de este caso, estamos conscientes que la situación económica actual en muchas ocasiones requiere de una preparación académica a nivel de postgrado para viabilizar la entrada al mercado laboral. La reducción en el número de empleos acentúa el rol de la educación como factor determinante de la competitividad individual en función de las pocas plazas de trabajo disponibles. No obstante, nos encontramos ante una situación que envuelve a un adulto quien ya ha obtenido su diploma universitario y es capaz de velar y abogar por sus propios intereses educativos.

Erró, por tanto, el tribunal apelativo intermedio al concluir que la pensión fijada en el año 2003 continuó vigente aun después del recurrido completar sus estudios de

bachillerato. Ello equivaldría a premiar el que un alimentista decidiese estudiar carreras postgrado indefinidamente, mientras que el padre — desconociendo de tales planes — esté obligado a continuar sufragando los estudios hasta tanto acuda al tribunal a solicitar el cese de la pensión.

Dadas las circunstancias existentes en este caso, no vemos razón de peso para imponer la obligación al padre alimentante de recurrir al tribunal y no a su hijo adulto.

IV

A base de lo anteriormente expuesto, se revoca la Sentencia emitida por el Tribunal de Apelaciones el 28 de abril de 2011 y se reinstala en su lugar el dictamen del Tribunal de Primera Instancia con fecha de 4 de octubre de 2010.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez disiente con opinión escrita, a la cual se une el Juez Asociado señor Estrella Martínez. El Juez Asociado señor Martínez Torres disiente haciendo constar las siguientes expresiones:

> El Juez Asociado señor Martínez Torres disiente por entender que lo fundamental en este caso es que estaba en vigor una orden judicial al padre para pagar alimentos a su hijo mayor de edad, mientras este último estudiara. La obligación de alimentar a los hijos mayores de edad surge como una excepción del Art. 146 del Código Civil, 31 L.P.R.A. sec. 565. Key Nieves v. Oyola Nievez, 116 D.P.R. 261 (1985). Ahora bien, una vez el hijo demuestra la capacidad de pago del progenitor alimentante así como la necesidad de la pensión y el tribunal la impone, el padre no puede adjudicarse el poder de decidir cuándo cesa de ser

necesaria esa pensión. Lo correcto es que cuando entienda que no lo es, acuda de inmediato al tribunal a solicitar que la deje sin vigor (con efecto retroactivo, de ser ello necesario), a menos que por una situación extraordinaria el alimentante estuviera realmente imposibilitado de acudir al tribunal. Valencia, Ex parte, 116 D.P.R. 909, 916 (1986). Lo contrario sería concederle al alimentante el poder de decidir a su entera voluntad la necesidad, duración y el monto de la pensión. Esa función le compete al tribunal, quien deberá seguir las normas del Código Civil, las leyes especiales de alimentos y nuestra jurisprudencia. Por encima del capricho de cualquier alimentante, es el juicio del tribunal el que debe decidir el cese de una pensión alimentaria. Si no se permiten "descuentos hechos a voluntad del alimentante", Guadalupe Viera v. Morell, 115 D.P.R. 4, 16 (1983), mucho menos se puede permitir dejar sin efecto unilateralmente la pensión que el tribunal impuso, pues ese es el descuento más grande posible, que reduce la pensión a cero.

Los Jueces Asociados señores Kolthoff Caraballo y Estrella Martínez disienten sin opinión escrita y se unen a lo expresado por el Juez Asociado señor Martínez Torres según arriba indicado.

                         Aida Ileana Oquendo Graulau
                         Secretaria del Tribunal Supremo

| Maricelis Rivera Alberto Villafañe Rivera<br><br>Recurridos<br><br>v.<br><br>Alberto A. Villafañe González<br><br>Peticionario | CC-2011-465 | *Certiorari* |
|---|---|---|

Opinión Disidente emitida por la Juez Asociada señora Rodríguez Rodríguez a la que se une el Juez Asociado señor Estrella Martínez

San Juan, Puerto Rico a 23 de julio de 2012

La controversia ante nuestra consideración versa sobre si un alimentante puede extinguir unilateralmente su obligación de alimentar cuando el alimentista culmina estudios conducentes al grado de bachillerato. Por entender que se equivoca la mayoría al sostener que la pensión alimentaria a favor del alimentista se extinguió automáticamente al éste terminar sus estudios de bachillerato, disiento de su curso de acción.

I

Alberto A. Villafañe Rivera (alimentista) advino a la mayoría de edad en el año 2002. Conforme a esto, el señor Villafañe Gonzalez (alimentante) solicitó al Tribunal de Primera Instancia que se le relevase de su obligación alimentaria. Sin embargo, el alimentista solicitó intervención y expresó que al momento se encontraba cursando su tercer año de bachillerato por lo cual subsistía su necesidad de alimentos. Así las cosas, se refirió la

solicitud al oficial examinador quien impuso una pensión alimentaria de trescientos cincuenta dólares mensuales pagaderos directamente al alimentista. Posteriormente, la cantidad se modificó para aumentarse a cuatrocientos dólares mensuales, también pagaderos directamente al alimentista. Se dispuso que la pensión se pagara mientras el alimentante estuviese estudiando.

En mayo de 2004 el alimentante dio extinguida de forma unilateral su obligación alimentaria. Razonó que toda vez que el alimentista había concluido sus estudios subgraduados su obligación se daba por terminada. Así las cosas, desapareció de la vida del alimentante, cambió su dirección y no le notificó el cambio ni a su hijo ni al tribunal primario.

Posteriormente, en el año 2009, el alimentista solicitó ante el Tribunal de Primera instancia que se cerrara sin deuda la cuenta abierta en la Administración para el Sustento de los Menores (ASUME). Expresó que la deuda que se reflejaba en ASUME era irreal, que sus hijos habían advenido a la mayoría de edad y que su obligación de alimentar había cesado. Por otra parte, el alimentista se opuso y sostuvo que al momento de que el alimentante pidiera el cierre de la cuenta adeudaba la cantidad de 22,400.00 dólares en concepto de pensión alimentaria por los años en que el alimentista había estado estudiando Derecho.

Luego de varios incidentes procesales el tribunal primario concluyó que si bien el padre había cesado de pagar la pensión alimentaria unilateralmente y cambiado su

dirección sin previa notificación no procedía el pago de la alegada deuda. Fundamentó su razonamiento en que el tiempo en el cual el alimentista estudió para tomar los exámenes de admisión a la Escuela de Derecho no podía computarse como tiempo de estudio. Así sostuvo que el alimentista había interrumpido sus estudios por un término de un año y por tanto no procedía el pago de pensión alimentaria.

Inconforme, el alimentista acudió al Tribunal de Apelaciones y señaló varios errores. El Tribunal de Apelaciones concluyó que el alimentante no podía culminar su obligación de alimentar unilateralmente y que, en cambio, debió acudir al tribunal inferior para que éste le relevase de su obligación de alimentar.

En desacuerdo el alimentante recurre a este Tribunal y señala que la decisión del foro intermedio es errada toda vez que no tomó en consideración la ausencia de prueba para sostener la deuda y que actuó de manera prejuiciada y parcializada. Además, expresó que la deuda estaba prescrita y que esta no había sido debidamente tramitada en el tiempo correspondiente.

La mayoría del Tribunal hoy le da la razón al peticionario y revoca el dictamen recurrido. Una mayoría de este Tribunal resuelve que, considerando que no existe evidencia alguna que indique que la obligación alimentaria se extendía más allá de los cuatro años del bachillerato, la obligación se extinguió automáticamente al alimentista terminar estudios subgraduados. Indica que, al ésta cesar automáticamente, era innecesario que el peticionario acudiese

al foro primario y solicitase relevo de pensión alimentaria. Por el contrario, indica que si el alimentista necesitaba ayuda adicional para continuar estudios posgraduados debió recurrir al foro judicial para solicitarla. Soy del criterio de que se equivoca la mayoría al así decidir. Veamos.

II

El deber alimenticio entre determinados parientes que impone el ordenamiento jurídico es una de las principales consecuencias que surgen de la relación jurídico-familiar. Federico Puig Peña, *Compendio de Derecho Civil Español*, Ediciones Pirámide, S.A., Madrid, 1976, pág. 491. Nuestro ordenamiento define los alimentos como "todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia. Los alimentos comprenden también la educación e instrucción del alimentista, cuando es menor de edad". 31 L.P.R.A. sec. 142. El deber de alimentar que tienen los padres respecto de sus hijos no emancipados está contenido en el Art. 153 del Código Civil. Se considera un efecto de la patria potestad y los padres vienen obligados a proveerlos hasta que sus hijos advengan a la mayoridad. 31 L.P.R.A. sec. 561. Al ser un corolario de la patria potestad, se mantiene hasta el momento en que la patria potestad culmina.

Empero, existe una segunda fuente de la obligación de alimentar. Ésta es la que surge del deber de los parientes de alimentarse entre sí. Es decir, aun cuando el alimentista advenga a la mayoridad, de éste necesitar alimentos y quien venga obligado a prestarlos tener capacidad para proveerlos,

este último deberá satisfacerlos. 31 L.P.R.A secs. 562, 565. Esto es así porque los alimentos están intrínsecamente vinculados al derecho a la vida y "tienen su génesis en el derecho natural, en los lazos indisolubles de solidaridad humana y de profunda responsabilidad de la persona por los hijos que trae al mundo, que son valores de la más alta jerarquía ético-moral y que constituyen una piedra angular de toda sociedad civilizada". *Arguello v. Arguello*, 155 D.P.R. 62 (2001), pág. 69 (citas omitidas).

Nuestro Código Civil dispone específicamente sobre el momento en que la obligación alimentaria entre parientes cesa. De esta manera, el Art. 149 sostiene que la obligación cesa con la muerte del obligado. 31 L.P.R.A. 149. Igualmente, el Art. 150 contiene causas adicionales para el cese de esta obligación, a saber: 1) cuando las condiciones económicas del alimentante cambian de manera tal que no podría satisfacerlos a no ser a expensas de sus propias necesidades y la de su familia; 2) cuando el alimentista no necesite los alimentos porque puede ejercer una profesión o ha mejorado su fortuna; 3) cuando el alimentista sea heredero forzoso y ha cometido alguna falta que da lugar a la desheredación; 4) cuando el hijo alimentista tenga necesidad de alimentos por causa de su mala conducta o falta de aplicación para el trabajo. 31 L.P.R.A. sec. 569. Asimismo, expresamos anteriormente que la obligación alimentaria que emana de la necesidad de alimentos entre parientes y que requiere que el menor tenga necesidad de una pensión alimentaria "no cesará automáticamente con la emancipación del menor, ni en el caso de que éste llegue a la

mayoría de edad". *Rodríguez Amadeo v. Santiago Torres*, 133 D.P.R. 785 (1993), pág. 793.

Por esa razón, hemos sido enfáticos a la hora de afirmar que "el deber legal de todo padre o madre de proveer los medios económicos necesarios para la educación de un hijo -proporcional siempre a los recursos del que los da y a las necesidades del que los recibe- no puede cesar 'ipso facto' meramente por el hecho de que el hijo ha alcanzado su mayoría de edad". *Key Nieves v. Oyola Nieves*, 116 D.P.R. 261 (1985). Justamente son esos lazos indisolubles de solidaridad humana y amor de los cuales hablamos en *Arguello* los que fundamentan esta responsabilidad de los padres de ayudar a sus hijos en la consecución de un título universitario.

En el año 1985 en *Key Nieves*, a la hora de decidir que procedía que el padre contribuyera a los estudio de su hija universitaria, aún después de que ésta adviniera a la mayoridad, tuvimos en cuenta que "el mundo en que vivimos hoy día, donde el éxito que se pueda obtener guarda relación directa con la preparación académica que poseamos y donde la competencia es la orden del día, la percepción de que los estudios universitarios constituyen un 'lujo' es cosa del pasado; dichos estudios se han convertido en una necesidad". *Key Nieves v. Oyola Nieves*, *supra*, pág. 266. Probablemente, hace más de veinticinco años atrás, la preparación postgraduada no se veía como una necesidad pero aun así, reconociendo la importancia de la educación universitaria, expresamos que "la situación particular que representan los estudios postgraduados, como  maestrías o doctorados, y el

estudio de aquellas profesiones que requieren en exceso de los cuatro años de bachillerato amerita una consideración especial y separada que, como regla general, tendrá que ser resuelta de acuerdo a los hechos particulares de cada caso". *Íd.*

Fue por ello que sostuvimos que en el caso de que el hijo continúe estudios postgraduados se considerarán los esfuerzos realizados, su aptitud para los estudios que desea continuar, los logros académicos y la razonabilidad del objetivo deseado. Luego de sopesados esos factores el tribunal sentenciador determinará si la solicitud de alimentos es meritoria o no lo es. *Íd.* Asimismo, expresamos que es el alimentista quien tiene el deber de solicitar los alimentos luego de que cumpla la mayoría de edad porque es a éste a quien le toca probar la necesidad de los mismos. *Íd.* Sobre lo anterior, la profesora Torres Peralta señala que:

> el foro judicial tiene facultad para determinar el pago de asistencia económica o de alimentos al hijo mayor de edad estudiante post graduado, en su amplia acepción de techo, comida, vestimenta, educación y asistencia médica, o de asistencia económica a base de las situaciones particulares de que se trate. Ello es así, siempre que el hijo mayor de edad que solicite alimentos o asistencia económica cubra los criterios mencionados, y además interese cursar estudios adicionales ya sea de maestría, o doctorado, o de cualquier profesión vocacional que requiera estudios adicionales más allá de los cuatro años de estudios universitarios.

Sarah Esther Torres Peralta, *La Ley de Sustento de Menores y el derecho alimentario en Puerto Rico*, STP Inc., San Juan, Tomo I, sec. 5.38-5.39.

Igualmente, conviene recalcar que "los dictámenes sobre pensión alimenticia siempre están sujetos a cambio, según

varíen las circunstancias de los alimentistas o del alimentante". *Ex Parte Negrón Rivera y Bonilla*, 120 D.P.R. 61 (1987), pág. 73. En este sentido, aunque la obligación alimentaria subsista porque no se ha dado ninguna de las causas de cese mencionas anteriormente, se podrá solicitar que ésta se revise o modifique por los tribunales.

Ahora bien, a la hora de solicitar un cambio en la pensión alimentaria debe tenerse en cuenta la Regla 8.4 de las de Procedimiento Civil que dispone que "la petición para que se expida una orden se hará mediante una moción, la cual, a menos que se haga durante una vista o un juicio, se hará por escrito, haciendo constar con particularidad los fundamentos legales y argumentos en que se basa, y, exponiendo el remedio o la orden que se interesa". 32 L.P.R.A. Ap. VI, R. 8.4. Es por ello que *Ex parte Valencia*, 116 D.P.R. 909 (1986) sostuvimos que, como regla general, la fecha de efectividad de una rebaja de pensión alimentaria deberá ser la del día en que se emitió el dictamen. Está claro que, sin dictamen judicial, no se puede decretar una rebaja de pensión alimentaria y mucho menos su relevo. Esto es así porque "[l]a pensión ha de satisfacerse en la cantidad dispuesta por el tribunal, sin descuentos hechos a voluntad del alimentante". *Guadalupe Viera v. Morell*, 115 D.P.R. 4 (1983), pág. 16.

### III

Como hemos visto, la obligación de alimentar surge de principalísimos principios como son la solidaridad, el amor y responsabilidad de los padres respecto a sus hijos. Es por

ello que, aun cuando la obligación de alimentar derivada de la patria potestad cesa por el hijo haber advenido a la mayor edad, de éste necesitar de la ayuda de su padre, y de su padre poder ayudarle, los tribunales podrán fijar una pensión alimentaria. Claro está, además de fijarla podrá imponer condiciones para que el alimentista mayor de edad permanezca siendo acreedor a la misma.

Ahora bien, una vez impuesta la pensión, la extinción de ésta, a diferencia de lo planteado por una mayoría de esta Curia, no puede estar al arbitrio del alimentante. De sucederse cambios que ameriten una rebaja o el relevo de la pensión alimentaria, el alimentante deberá solicitárselo al tribunal. Son los tribunales los únicos con autoridad para declarar la obligación extinta. Para ello, el alimentante deberá comparecer al tribunal mediante moción de relevo de pensión alimentaria y fundamentar su pedido según dispuesto en la Regla 8.4 de las de Procedimiento Civil.

En el caso ante nuestra consideración el alimentante solicitó relevo del pago de pensión alimentaria en el mismo momento en que el alimentista advino a la mayoría de edad. Sin embargo, el alimentista compareció ante el foro inferior y sostuvo que aún estaba estudiando, por lo cual requería que el alimentante le proporcionara alimentos para continuar con sus estudios. El foro primario encontró probada la necesidad de los alimentos y fijó una pensión alimentaria. Además, le impuso al alimentista la obligación de evidenciar su aprovechamiento académico al final de cada semestre de estudio.

En mayo de 2004 el alimentante, **sin solicitar relevo de pago de pensión alimentaria al tribunal de instancia**, dejó de cumplir con su obligación. Además, cambió su dirección sin notificación al tribunal ni al alimentista. Años más tarde acude al tribunal primario para que éste cierre una cuenta existente en la Administración para el Sustento de Menores (ASUME) y la declare sin deuda y alega que la deuda reflejada era irreal.

El alimentante, contrario a lo planteado en la Sentencia de este Tribunal, no podía adjudicarse la potestad de declarar que su obligación había culminado. Al así hacerlo el alimentante se arrogó potestades que sólo tienen los tribunales. Si éste entendía que su hijo había culminado su bachillerato y por ende su obligación terminada debió recurrir al foro judicial para que éste evaluara los méritos de su solicitud. No lo hizo. En cambio, desapareció de la vida de su hijo quien, con ayuda de su madre y de préstamos estudiantiles, concluyó con éxito una carrera profesional. Evidencia obra en el expediente para probar su aprovechamiento académico y aptitud para el estudio, tal es así que hoy por hoy el alimentista ejerce como abogado.

Este Tribunal no puede, de ninguna manera, contribuir a que los padres se desliguen de sus hijos cuando éstos tienen medios para contribuir a su formación profesional. De igual manera, tampoco puede fomentar que los alimentantes se atribuyan potestades de los tribunales a la hora de determina cuándo cesa su obligación de alimentar. Es por ello que, a diferencia de la mayoría del Tribunal que entiende que era el

alimentista el llamado a recurrir al foro judicial para obtener una extensión de pensión, soy del criterio de que al alimentante no solicitar relevo de pensión alimentaria ésta no se extinguió automáticamente. En este sentido, es claro que el principio citado por la mayoría en cuanto a que la pensión se hace innecesaria una vez cesa la necesidad del alimentista, no puede quedar al arbitrio del alimentante.

Conviene además aclarar que esta controversia no versa, como plantea la mayoría, sobre quién debía acudir al tribunal a pedir relevo o extensión de pensión alimentaria. Se trata, más bien, de decidir si un alimentante puede dar por terminada unilateralmente su obligación de alimentar cuando existe una orden vigente del foro judicial. Soy del criterio de que no.

IV

Por los fundamentos antes expresados disiento del curso de acción seguido por una mayoría de este Tribunal. En cambio, determinaría que el alimentante debía recurrir al foro judicial mediante una moción de relevo de pensión para que éste determinara si continuaba o no la obligación de proveer alimentos a su hijo mayor de edad mientras éste estuviese estudiando. Así, confirmaría el dictamen del foro intermedio y ordenaría el pago de la cantidad adeudada en concepto de pensión alimentaria.

Anabelle Rodríguez Rodríguez
Juez Asociada
